UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON COX,

    Petitioner,

v.

BRYAN MORRISON[1],

    Respondent.

Case No. 22-11639
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [1], DECLINING CERTIFICATE OF APPEALABILITY, GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS, AND AMENDING THE CASE CAPTION**

After making an early morning purchase at a Michigan gas station, a young woman continued on her way to work. She was unaware of an assailant hiding in the back seat of her car who subsequently put a knife to her throat, ordered her to pull over, sexually assaulted her, and then tried to run her down when she escaped from the vehicle.

Following a trial in Saginaw County Circuit Court, the jury was convinced that Jason Cox was the assailant. He was convicted of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b, kidnapping, Mich. Comp. Laws § 750.349,

---

[1] Jason Cox is presently incarcerated at the Lakeland Correctional Facility in Coldwater, Michigan. *See* Michigan Department of Corrections Offender Tracking Information System ("OTIS"), https://perma.cc/GS7Z-3S9F. The only proper respondent in a habeas case is the habeas petitioner's custodian, here, the warden of Lakeland. *See* Rule 2(a), Rules Governing Section 2254 Cases, 28 U.S.C. § 2254. The warden at Lakeland is Bryan Morrison. Accordingly, the Clerk of Court is directed to amend the case caption to substitute Bryan Morrison as the respondent.

carjacking, Mich. Comp. Laws § 750.529a, assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84, unlawful imprisonment, Mich. Comp. Laws § 750.349b, felonious assault, Mich. Comp. Laws § 750.82, and being a fourth felony habitual offender, Mich. Comp. Laws § 769.12. Cox received a lengthy prison sentence, which he is currently serving at the Lakeland Correctional Facility in Coldwater, Michigan.

After his state convictions were affirmed on direct appeal, Cox filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court. He raises the same ineffective of assistance of counsel claims that were thoroughly addressed on the merits by the Michigan Court of Appeals. As that court reasonably applied the governing law, Cox's petition is DENIED.

I.

The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review under 28 U.S.C. § 2254(e)(1). So the Court incorporates them here.

> On December 13, 2018, at 6:10 a.m., the victim left her home in St. Charles, Michigan, to drive to work in a borrowed Pontiac Grand Prix. On her way to work, the victim stopped at a gas station at 6:13 a.m. to make a purchase. After doing so, the victim returned to the Grand Prix, which she had left unlocked. The victim proceeded to drive to her place of employment in Ithaca, Michigan. After several minutes passed, a man whom the victim later identified as Cox, "jumped from the back seat up behind [the victim] and put his arms around [her] neck and a knife to [her] throat." Cox told the victim, who was having trouble breathing and could feel the knife cutting her neck, to keep driving. The victim complied with Cox's demand.
>
> As the victim approached "a little grassy parking lot," Cox instructed the victim to pull over. After the victim did so, Cox instructed her to

2

get into the backseat with him. Once in the backseat, the victim removed her clothing, and Cox digitally penetrated the victim's vagina. After a vehicle drove by, Cox climbed into the driver's seat and told the victim to get into the front passenger seat and to put her "head down in the floor boards" so that she would be out of view and could not see out of the windows. The victim put on her pants and complied with Cox's demand, which required reclining the seat.

Cox began driving and asked the victim several times where her phone was located. Cox eventually permitted the victim to sit up in order to locate the phone, at which point the victim opened the door and jumped from the moving vehicle. While the victim was attempting to get to her feet, Cox "floored" the vehicle and "clipped" the victim in the hip area. According to the victim, she "went flying through the air" and landed in a ditch. Cox again attempted to hit the victim with the car, but she was able to escape to a nearby home. Law enforcement was contacted. The victim was transported to the hospital to be examined and treated for her injuries, which included severe road rash and a broken arm.

At 6:48 a.m., Cox returned the Grand Prix to the gas station parking lot, and the vehicle was later located by law enforcement. Keys, clothing, and a black glove were found inside the Grand Prix. The front passenger seat was also reclined. Cox was arrested that afternoon and was charged with assault with intent to murder (AWIM), MCL 750.83; CSC-I; carjacking; kidnapping; unlawful imprisonment; and felonious assault. Although the victim was examined by medical professionals and there was a possible presence of male DNA found on her body, law enforcement never collected a sample of Cox's DNA for testing.

Trial began in May 2019. Cox's defense at trial was that he was not the individual who committed the crimes and that law enforcement rushed to judgment by charging him with the crimes a short period of time after they occurred. To support this argument, Cox highlighted the fact that the DNA that was found on the victim was not tested and therefore could not be tied to Cox. Cox also highlighted the fact that the victim offered inconsistent statements, that his fingerprints were never found in or on the Grand Prix, and that a knife was never found in his possession.

*People v. Cox*, No. 350033, 2021 WL 2026161, at *1–2 (Mich. Ct. App. May 20, 2021), *lv. den.* 965 N.W.2d 532 (Mich. 2021).

The defense was unsuccessful and Cox was convicted on all counts. (ECF No. 1, PageID.1-2.) On direct appeal he claimed his counsel was ineffective for failing to conduct an adequate investigation into the DNA evidence and failing to call the Michigan State Police crime lab analyst to testify about the significance of the failure to test the DNA evidence. (*Id*. at PageID.2.) When that too was unsuccessful, Cox filed motions to remand that, in essence, sought to have the DNA from the rape kit compared to his DNA. (*Id*. at PageID.3-4.) Those requests were also denied. (*Id*.)

So Cox turned to this Court for relief, petitioning for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1.) The Warden has filed a response. (ECF No. 7.) There are no exhaustion or procedural default issues as Cox's petition raises similar issues to those he asserted in state court. In "ground one," Cox asserts that he "was deprived of his right to effective assistance of counsel where his attorney unreasonably failed to conduct an investigation that could have shown Cox's actual innocence." (*Id*. at PageID.5.) Relatedly, in "ground two," he complains about the failure to compare his DNA against that found in the victim's rape kit collected by the Michigan State Police. (*Id*. at PageID.7.) But on habeas review, the state court ruling rejecting these arguments is entitled to great deference. And applying that deference, the Court cannot grant the application for the writ.

## II.

The Antiterrorism and Effective Death Penalty Act (and 28 U.S.C. § 2254 in particular) "confirm[s] that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86,

103 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). So to obtain relief in federal court, habeas petitioners who challenge "a matter 'adjudicated on the merits in State court' [must] show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)). A state court's application of federal law is unreasonable only if the petitioner can demonstrate that it is "objectively unreasonable, not merely wrong[.]" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). The court's reasoning must be "so lacking in justification" that the error is "beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. The standard is "intentionally difficult to meet." *Woods*, 135 S. Ct. at 1376 (citation and internal quotations marks omitted).

### III.

The Court addresses Cox's claims of ineffective assistance of counsel under the familiar standard announced in *Strickland v Washington*, 466 U.S. 668 (1984). Cox must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *See id*. at 687. Counsel's performance is considered deficient when "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. Prejudice occurs when there is "a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

And under AEDPA, obtaining relief under *Strickland* is even more difficult because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (citations and quotation marks omitted). This doubly-deferential standard requires the Court to give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013). Thus, "the question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105.

### A.

The Court begins with Cox's claim that his trial counsel unreasonably failed to conduct an investigation that could have shown his innocence. Cox's habeas petition incorporates certain arguments from his state court briefs that help to elaborate his claim. Cox's counsel had a Michigan State Police report indicating that possible male DNA was found on the victim's body. *Cox*, 2021 WL 2026161, at *2. He faults his counsel for not having insisted that the Michigan State Police lab scientists complete their analysis of the DNA collected from the rape kit and compare that DNA with a sample from Cox before going to trial. *See* ECF No. 1, PageID.29. Cox professed his innocence and wanted his lawyer to take the chance

the DNA testing would not show a match. His counsel, however, did not want to take the risk the testing would show a match. (*Id.* at PageID.29–31.)

"Without question, failing to investigate certain theories and witnesses can support a showing of deficient performance under some circumstances, as [Cox] suggests." *Taylor v. Bell*, No. 21-1348, 2023 U.S. App. LEXIS 2681, at *12 (6th Cir. Feb. 1, 2023). The Supreme Court has made clear that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691; *see also Richey v. Bradshaw*, 498 F.3d 344, 362 (6th Cir. 2007) ("A lawyer who fails adequately to investigate, and to introduce into evidence, information that demonstrates his client's factual innocence, or that raises sufficient doubts as to that question to undermine confidence in the verdict, renders deficient performance." (citations omitted)).

The Michigan Court of Appeals addressed this claim of deficient performance on the merits. It noted first that "the prosecution presented overwhelming evidence of Cox's guilt." *Cox*, 2021 WL 2026161, at *3. And thus, explained the appeals court,

> defense counsel may have suspected that Cox's DNA would likely match the DNA found during the medical examination and would therefore bolster the prosecution's case. Defense counsel likely made the reasonable strategic choice that Cox would be best served by proceeding to trial without having conducted such a test. Indeed, in the event that the DNA found on the victim matched Cox, defense counsel would be required to explain the unfavorable DNA results. Unfavorable DNA results would have severely undercut Cox's defense

7

> that he was not the perpetrator, that law enforcement had failed to adequately investigate the crimes, and that there was no physical evidence tying him to the crimes. Consequently, we conclude that Cox has failed to overcome the presumption that defense counsel made a strategic decision not to request testing.

*Cox*, 2021 WL 2026161 at *3.

Cox's petition makes no effort to demonstrate that this is an unreasonable application of *Strickland*. Nor could he. Part of his trial counsel's defense strategy was to show that law enforcement did not analyze or connect Cox to the DNA. That instead, they made a rush to judgment. A reasonable argument can be made that counsel's strategic choice to forego any further testing of the DNA and risk unveiling further incriminating evidence against Cox satisfied *Strickland's* deferential standard. *See Taylor*, 2023 U.S. App. LEXIS 2681, at *14 ("To be sure, trial counsel faced difficult decisions regarding whether to attempt to match the footprints and whether to test the jacket and gun for DNA—the results of which could have worked to Taylor's detriment. Thus, the state appellate court soundly reasoned that counsel may have strategically decided against having evidence tested in order to avoid further incriminating Taylor.")

Having determined that Cox failed to establish his counsel's deficient performance under *Strickland*, the Michigan Court of Appeals still analyzed the prejudice prong. It carefully recounted the evidence presented at trial. It found this evidence to be "overwhelming." *Cox*, 2021 WL 2026161, at *3.

This evidence included that "[t]he victim, who was in close proximity to Cox and was able to smell alcohol on his breath when the crimes were committed,

8

identified Cox as her assailant." *Id*. Numerous witnesses testified about the victim's demeanor and injuries. Which were corroborated by photographs. *Id*. The gas station clerk, who was familiar with Cox, testified about Cox's movements and demeanor the morning of the assault. *Id*. She described the clothing he was wearing and the car he was driving, which was also captured on video. *Id*. This video captured the victim's car leaving and returning to the gas station, with the driver wearing clothing similar to that of Cox. *Id*. Cox was arrested in the truck he had driven to the gas station. *Id*. His girlfriend was with him. She asked what he had "done," and he responded that he had "jacked a ride because he did not have one[.]" *Id*. Later that day, Cox made a similar statement during a phone call from the jail. He indicated that he had "jumped in the back seat of a girl's car" because he did not have a ride. *Id*. Additionally, when Cox was arrested, he had a black glove that matched the glove located in the victim's car and was wearing a sweatshirt similar to that described by the gas station clerk. *Id*.

Cox's speculation that testing of the DNA may have been favorable does not overcome the reasonableness of the Michigan Court of Appeal's conclusion that, in light of this overwhelming evidence, Cox was not prejudiced by his counsel's failure to seek additional DNA testing. *See, e.g., Waterford v. Washburn*, 455 F. Supp. 3d 579, 607 (M.D. Tenn. 2020).

In sum, given the "strong presumption that counsel's representation was within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, and because of what the state court termed "overwhelming evidence" of

9

Cox's guilt, *Cox*, 2021 WL 2026161, at *3, the state court reasonably applied *Strickland*.

### B.

Cox's other claim for habeas relief is primarily a repeat of the first. He says the MSP "found male DNA in the victim's rape kit" yet "[i]t has not been compared" to Cox's DNA. (ECF No. 1, PageID.7.) For the factual support, he simply cites to the Michigan Supreme Court brief where he sought remand for the testing to be done. (ECF No. 1, PageID.35.)

Cox provides no basis for this Court to question the Michigan Court of Appeals' conclusion that defense counsel's failure to request that Cox's DNA be tested was a reasonable trial strategy. In addressing Cox's challenge (on direct appeal) to his counsel's failure to call a witness from the MSP crime lab, the appeals court found that:

> Detective Larry Biniecki testified at trial that a report from the MSP Crime Lab indicated that there was a possible presence of male DNA found on the victim's body. During cross-examination, Detective Biniecki acknowledged that he never collected a DNA sample from Cox and that the DNA taken from the victim was never compared to a "known sample[.]" Although Detective Biniecki testified that crimes involving digital penetration typically do not yield DNA evidence, the jury was well aware that DNA evidence was located on the victim's body and that law enforcement did not analyze the potential male DNA. Importantly, defense counsel used law enforcement's failure to perform further testing as part of the basis for his argument that this case involved "a rush to judgment."

*Cox*, 2021 WL 2026161, at *4. As addressed, counsel's decision to utilize the lack of testing to Cox's benefit and avoid the risk of an unfavorable test result was a reasonable strategic decision that defeats Cox's ineffective assistance of counsel

10

claim. *See, e.g., McKay v. Stephenson*, No. 22-10345, 2023 U.S. Dist. LEXIS 160371, at \*15 (E.D. Mich. Sept. 11, 2023) ("Defense counsel's failure to request that the additional items be tested for DNA" to avoid the risk that it would further incriminate defendant "was a reasonable trial strategy"), *COA denied*, No. 23-1928, 2024 U.S. App. LEXIS 7514 (6th Cir. Mar. 29, 2024); *Berry v. Palmer*, 518 F. App'x 336, 340 (6th Cir. 2013) (finding reasonable trial strategy where "[i]nstead of pursuing further DNA testing, trial counsel chose to argue that the unidentified hair created reasonable doubt as to Berry's guilt"). Additionally, Cox has failed to present any evidence to show that additional DNA testing or analysis would have been favorable to him.

Thus, the Court cannot find that the Michigan Court of Appeals' rejection of Cox's ineffective assistance of counsel claim involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts.

## IV.

Before Cox may appeal this decision, the Court must determine whether to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), Cox must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve

11

encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). The Court finds that reasonable jurists could not debate the resolution of Cox's relatively straightforward ineffective assistance of counsel claims. Accordingly, a certificate of appealability will not issue from this Court. *Davis v. Rapelje*, 33 F. Supp. 3d 849, 865 (E.D. Mich. 2014). However, if Cox chooses to appeal the Court's decision, he may proceed in forma pauperis on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V.

For these reasons, the Court DENIES Cox's Petition for Writ of Habeas Corpus and DENIES him a certificate of appealability. Cox is granted leave to appeal in forma pauperis.

IT IS SO ORDERED.

Dated: April 22, 2024

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
